# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| LESLIE A. PHILLIPS, <br><br> Plaintiff, <br><br> v. <br><br> NANCY A. BERRYHILL, Acting Commissioner of Social Security, <br><br> Defendant. | No. 17 C 4509 <br><br> Magistrate Judge Mary M. Rowland |

## MEMORANDUM OPINION AND ORDER

Plaintiff Leslie A. Phillips filed this action seeking reversal of the final decision of the Commissioner of Social Security denying her application for Supplemental Security Income (SSI) under Title XVI of the Social Security Act. The parties consented to the jurisdiction of the United States Magistrate Judge, pursuant to 28 U.S.C. § 636(c), and filed cross motions for summary judgment.[1] This Court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c). For the reasons stated below, the case is remanded for further proceedings consistent with this Opinion.

## I. PROCEDURAL HISTORY

Plaintiff applied for SSI benefits on October 29, 2013, alleging that she became disabled on July 20, 2008 because of two degenerated or herniated discs and possible

---

[1] The Court construes Plaintiff's memorandum seeking to reverse the Commissioner's decision [16] as a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56.

sciatica. (R. at 68, 73, 187). Her claim was denied initially on March 25, 2014, and upon reconsideration on October 10, 2014, after which Plaintiff requested a hearing. (*Id.* at 84–88, 98–102). Plaintiff, represented by counsel, testified at a hearing before an Administrative Law Judge (ALJ) on May 11, 2016. (*Id.* at 35–67). The ALJ also heard testimony from Thomas Gusloff, a vocational expert (VE). (*Id.* at 60–66).

The ALJ issued an unfavorable decision on August 1, 2016. (R. at 16–31). Applying the five-step sequential evaluation process, the ALJ found, at step one, that Plaintiff had not engaged in substantial gainful activity since October 29, 2013, her application date. (*Id.* at 21). At step two, the ALJ found that Plaintiff's degenerative disc disease was a severe impairment. (*Id.*). At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any of the listings enumerated in the regulations. (*Id.* at 21–22).

The ALJ then assessed Plaintiff's Residual Functional Capacity (RFC)[2] and determined that Plaintiff has the RFC to:

> lift 10 pounds occasionally[3] and 10 pounds frequently. She can sit at least 6 hours in an 8-hour workday. She can walk and/or stand a total of 2 hours in an 8-hour workday. She can frequently climb ramps or stairs, stoop, or kneel. She can occasionally climb ladders, ropes, or

---

[2] Before proceeding from step three to step four, the ALJ assesses a claimant's RFC. 20 C.F.R. § 416.920(a)(4). "The RFC is the maximum that a claimant can still do despite his mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675–76 (7th Cir. 2008).

[3] It appears that the ALJ made a typographical error in this portion of her decision, limiting the Plaintiff to lifting 10 pounds occasionally and 10 pounds frequently. The Court notes that the ALJ's hypothetical questions to the VE limited the hypothetical worker to lifting 20 pounds occasionally and 10 pounds frequently. (R. at 61). Although this presumed error does not affect the Court's decision, the ALJ should clarify on remand the amount she believes Plaintiff can occasionally lift.

2

scaffolds. She can occasionally crouch or crawl. She can frequently reach bilaterally. She would have the ability to sit and stand at will. She could maintain a sitting position for 30 minutes before need[ing] to stand up and maintain a standing or walking position for 30 minutes before having to sit down for 5 minutes; she would be off task for no more than 15% of the workday.

(R. at 22). Moving to step four, the ALJ determined that Plaintiff had no past relevant work. (*Id.* at 26). At step five, based on Plaintiff's RFC, age, education, work experience, and the Medical-Vocational Guidelines (20 C.F.R. Part 404, Subpart P, Appendix 2), the ALJ determined that jobs exist in significant numbers in the national economy that Plaintiff can perform. (*Id.*). Specifically, the ALJ found that the Medical-Vocational Guidelines supported a finding that Plaintiff was "not disabled." (*Id.* at 26–27). Accordingly, the ALJ concluded that Plaintiff was not under a disability since October 29, 2013, the date she filed her SSI application. (*Id.* at 27).

On April 25, 2017, the Appeals Council denied Plaintiff's request for review. (R. at 1–6). Plaintiff now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner. *Villano v. Astrue*, 556 F.3d 558, 561–62 (7th Cir. 2009).

## II. STANDARD OF REVIEW

A Court reviewing the Commissioner's final decision may not engage in its own analysis of whether the claimant is severely impaired as defined by the Social Security Regulations. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). Nor may it "reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute [its] own judgment for that of the Commissioner." *Id.* The Court's task is "limited to determining whether the ALJ's factual findings are

3

supported by substantial evidence." *Id.* "Evidence is considered substantial if a reasonable person would accept it as adequate to support a conclusion." *Indoranto v. Barnhart*, 374 F.3d 470, 473 (7th Cir. 2004); *see Moore v. Colvin*, 743 F.3d 1118, 1120–21 (7th Cir. 2014) ("We will uphold the ALJ's decision if it is supported by substantial evidence, that is, such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.") (internal quotations omitted). "Substantial evidence must be more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). "In addition to relying on substantial evidence, the ALJ must also explain his analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005).

Although this Court accords great deference to the ALJ's determination, it "must do more than merely rubber stamp the ALJ's decision." *Scott v. Barnhart,* 297 F.3d 589, 593 (7th Cir. 2002) (citation, quotations, and alternations omitted). "This deferential standard of review is weighted in favor of upholding the ALJ's decision, but it does not mean that we scour the record for supportive evidence or rack our brains for reasons to uphold the ALJ's decision. Rather, the ALJ must identify the relevant evidence and build a 'logical bridge' between that evidence and the ultimate determination." *Moon v. Colvin*, 763 F.3d 718, 721 (7th Cir. 2014). "[W]here the Commissioner's decision lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Steele v. Barnhart,* 290 F.3d 936, 940 (7th Cir. 2002).

4

## III. DISCUSSION

Plaintiff makes a number of arguments challenging the ALJ's decision. After reviewing the record and the parties' briefs, the Court is persuaded by Plaintiff's arguments that the ALJ (1) failed to properly support her RFC determination with an evidentiary basis; and (2) erred in evaluating Plaintiff's subjective allegations.[4]

### A. The ALJ's RFC Determination

"The RFC is an assessment of what work-related activities the claimant can perform despite her limitations." *Young,* 362 F.3d at 1000; *see* 20 C.F.R. § 416.945(a)(1) ("Your residual functional capacity is the most you can still do despite your limitations."). More specifically, the "RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities." SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996). The RFC "is based upon medical evidence in the record and other evidence, such as testimony by the claimant or his friends and family." *Craft*, 539 F.3d at 676.

An ALJ's "RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8p, at *7. The ALJ must also explain how she reached her conclusions about a claimant's physical capabilities and build an "accurate and logical bridge from the evidence to

---

[4] Because the Court remands on these bases, it need not address Plaintiff's other argument at this time.

5

the conclusion." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008) (internal quotations omitted); *Briscoe*, 425 F.3d at 352. And the ALJ must identify some record basis to support the RFC finding. *See Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011). If an ALJ fails to explain and support her RFC conclusions, this failure itself "is sufficient to warrant reversal." *See Briscoe*, 425 F.3d at 352.

Here, the ALJ's RFC included several limitations pertaining to Plaintiff's ability to lift, sit, walk, stand, reach, climb, stoop, kneel, crouch, crawl, reach, and remain on-task. (R. 22). After setting forth the requirements and standards she followed in rendering her decision, the ALJ proceeded to summarize different aspects of the evidentiary record, including portions of Plaintiff's hearing testimony, medical records (including the lack of treatment records for particular time periods), Plaintiff's treatment, and the results of Plaintiff's examinations. (*Id.* at 22–24). Following this summary, the ALJ stated that:

> The above evidence supports the severity of the claimant's impairments and resulting limitations set forth in the aforementioned residual functional capacity. In sum, the above residual functional capacity assessment is supported by the overall evidence of record, including the medical findings, nature and frequency of treatment, the claimant's activities, the opinion evidence, the claimant's testimony, and other factors discussed above.

(*Id.* at 24). The ALJ concluded by repeating the functional limitations that made up her RFC, indicating that they "accommodated the claimant's impairment of degenerative disc disease and associated symptoms." (*Id.*).

This analysis is insufficient, however, as it fails to build an "accurate and logical bridge from the evidence" to the RFC's limitations. *Berger*, 516 F.3d at 544 (internal

6

quotations omitted). For instance, although Plaintiff underwent a consultative examination and had her records reviewed by state agency medical consultants (see R. 68–79, 274–76), the ALJ never attempted to link any findings from the resulting medical opinions to the RFC limitations she imposed. (*See id.* at 23–24, 26). In fact, the ALJ explicitly gave the opinions of the state agency medical consultants little weight. (*Id.* at 26). And whether from a medical opinion or otherwise, the ALJ did not cite any evidence to justify her finding that, given Plaintiff's severe back impairment, Plaintiff could sit for an accumulated total of six hours and walk and/or stand for a total of two hours during an eight-hour workday. Nor did the ALJ cite any evidence (medical or otherwise) to support her belief that Plaintiff could frequently climb ramps or stairs, stoop, and kneel and could occasionally crouch, crawl, and climb ladders, ropes, or scaffolds. Indeed, the ALJ does not cite any evidence indicating that Plaintiff's ability to carry out these actions was even evaluated. And the ALJ's determination of Plaintiff's off-task percentage (no more than 15% of the workday) similarly appears without any evidentiary basis. *See Lanigan v. Berryhill*, 865 F.3d 558, 563 (7th Cir. 2017) (finding that the ALJ improperly failed to "establish a logical connection between the evidence" and his 10% off-task conclusion).

The ALJ's RFC also does not account for Plaintiff's testimony that, after alternating between sitting and standing for a total of one hour, she must lie down. (R. at 48–49). Sitting for six hours and walking/standing for two hours in an eight-hour workday does not leave time for lying down. Nor does the Commissioner argue that the RFC's off-task allowance accommodates this limitation. And although the

7

RFC allows Plaintiff to sit and stand at will (*id.* at 24), Plaintiff testified that she believed she could not work full-time even with such an accommodation due to her need to lie down. (*Id.* at 53).

The ALJ should have addressed Plaintiff's need to lie down during the day. *See, e.g.*, *McCammond v. Colvin*, No. 15 C 6589, 2016 WL 3595736, at *6 (N.D. Ill. July 5, 2016) (requiring the ALJ on remand to assess the claimant's "claim that he must sit or lie down throughout the day"). That is especially true here, where the VE testified that no jobs would be available for an individual who had to lie down for 15 minutes every hour throughout the day. (R. 65–66). It may be that the ALJ did not believe Plaintiff's testimony about her need to lie down; but, if so, she was required to articulate why this was the case. *See O'Connor-Spinner v. Astrue*, 627 F.3d 614, 621 (7th Cir. 2010) ("An ALJ must explain why he does not credit evidence that would support strongly a claim of disability, or why he concludes that such evidence is outweighed by other evidence."); *Gonzalez v. Colvin*, No. 12 CV 10262, 2014 WL 4627833, at *7 (N.D. Ill. Sept. 16, 2014) ("It may be that the ALJ disbelieved Gonzalez's description of his swelling, but on remand she should expressly address this claimed limitation and either explain why she rejects it or discuss how it fits into her RFC assessment."). The ALJ failed to do so.

In defending the ALJ's RFC determination, the Commissioner contends that the ALJ was not required to link specific RFC limitations to specific items of evidence. (Def.'s Mem., Dkt. 20 at 4). But the ALJ still had to link her RFC limitations to the evidence in *some* manner. As discussed above, the ALJ did no such thing for several

of the RFC limitations. The Commissioner also asserts that the ALJ did in fact explain how the medical records supported the RFC limitations. (*Id.*). The Commissioner, however, notably fails to identify a single example where the ALJ did this, see *id.* at 4–5, and, as far as the Court can discern, the ALJ did not actually provide any such explanation.

As noted above, the ALJ also did not rely upon any medical opinions to support her RFC determination. Although the ALJ has the final responsibility for determining an RFC, which generally may be supported by evidence other than medical opinions (Def.'s Mem., Dkt. 20 at 5), medical opinions still play an important role in determining a claimant's functional limitations. *See Hill v. Berryhill*, No. 1:16-CV-00523, 2017 WL 1028150, at *6 (N.D. Ill. Mar. 16, 2017) (finding that remand was necessary where "the ALJ's RFC determination [was] not supported by any medical opinion in the record to which she gave weight"); *McDavid v. Colvin*, No. 15 C 8829, 2017 WL 902877, at *5 (N.D. Ill. Mar. 7, 2017) (finding that where the ALJ discounted the only medical opinions that set forth RFC determinations, "she was left with an evidentiary record that did not support her RFC determination").

Here, the ALJ gave the medical opinions of the state agency medical consultants little weight. (R. at 26). And she did not discuss how any other medical examinations or assessments touched upon the various RFC limitations she imposed on Plaintiff. (*Id.* at 22–26). Thus, the ALJ must have used her own lay opinions to render her RFC assessment. *See Hill*, 2017 WL 1028150, at *6 ("The ALJ relied on a record that lacked a medical opinion assessing Claimant's functional abilities based on her

mental and physical limitations. To fill in this gap, the ALJ must have resorted to lay speculation, as there is no medical opinion for her to have relied upon."). This was improper, and it cannot support the ALJ's RFC determination. *See id.*; *McDavid*, 2017 WL 902877, at *6; *see also Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996) ("ALJs must not succumb to the temptation to play doctor and make their own independent medical findings.").

For these reasons, the ALJ failed to build a logical bridge between the evidence and her RFC determination, *Berger*, 516 F.3d at 544, and failed to identify a sufficient record basis for her RFC finding. *See Scott*, 647 F.3d at 740. Thus, remand is required.

**B. The ALJ's Evaluation of Plaintiff's Subjective Allegations**

Plaintiff also argues that the ALJ erred in evaluating her subjective allegations addressing the intensity, persistence, and limiting effects of her pain and symptoms. A two-step process governs the evaluation of a claimant's description of her pain and symptoms. First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce the individual's symptoms, such as pain." SSR 16-3p, 2016 WL 1119029, at *2 (Mar. 16, 2016).[5] "Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's symptoms is

---

[5] SSR 16-3p supersedes SSR 96-7p and its focus on "credibility," clarifying "that subjective symptom evaluation is not an examination of the individual's character." *See* SSR 16-3p, at *1. Last year, the Social Security Administration clarified that SSR 16-3p only applies when ALJs "make determinations on or after March 28, 2016," and that SSR 96-7p governs cases decided before March 28, 2016. *See* Notice of Social Security Ruling, 82 Fed. Reg. 49462-03, 2017 WL 4790249, at n.27 (Oct. 25, 2017). Because the ALJ issued her opinion on August 1, 2016 (R. 27), SSR 16-3p applied and will continue to apply on remand. *See* Notice of Social Security Ruling, 82 Fed. Reg. 49462-03, at n.27.

10

established, [the ALJ] evaluate[s] the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities[.]" *Id.*

In evaluating the claimant's subjective symptoms, "an ALJ must consider several factors, including the claimant's daily activities, her level of pain or symptoms, aggravating factors, medication, treatment, and limitations, and justify the finding with specific reasons." *Villano*, 556 F.3d at 562 (citations omitted); *see* 20 C.F.R. § 416.929(c)(3); SSR 16-3p, at *7. An ALJ may not discredit a claimant's testimony about her symptoms "solely because there is no objective medical evidence supporting it." *Villano*, 556 F.3d at 562. Even if a claimant's symptoms are not supported directly by the medical evidence, the ALJ may not ignore circumstantial evidence (medical or lay) that does support a claimant's credibility. *See Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539–40 (7th Cir. 2003).

The Court will uphold an ALJ's subjective symptom evaluation if the ALJ gives specific reasons for that finding, supported by substantial evidence. *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009). The ALJ's decision "must contain specific reasons for a credibility finding; the ALJ may not simply recite the factors that are described in the regulations." *Steele*, 290 F.3d at 942 (internal quotations omitted). "Without an adequate explanation, neither the applicant nor subsequent reviewers will have a fair sense of how the applicant's testimony is weighed." *Id.*

As an initial matter, Plaintiff argues that the ALJ failed to properly apply the preponderance of the evidence standard because she found that Plaintiff's symptom

11

statements were "not entirely consistent" with the evidence. (Pl.'s Mem., Dkt. 16 at 16–17). The finding at issue is quoted, in full, below:

> After careful consideration of the evidence, the undersigned finds that [Plaintiff's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medial evidence and other evidence in the record for the reasons explained in this decision.

(R. at 24–25). But this statement has nothing to do with the preponderance of the evidence standard. Instead, it merely reflects another ALJ's use of "language that the Seventh Circuit has repeatedly described as meaningless boilerplate because it yields no clue to what weight the ALJ gave the testimony." *Boyd v. Berryhill*, No. 17 C 3686, 2018 WL 3303263, at *3 (N.D. Ill. July 5, 2018) (internal quotations and alteration omitted). Although the ALJ began her analysis with oft-criticized boilerplate language, she did proceed to give reasons for not fully crediting Plaintiff's allegations, which the Court must analyze. *See Pepper v. Colvin*, 712 F.3d 351, 367–68 (7th Cir. 2013) ("However, the simple fact that an ALJ used boilerplate language does not automatically undermine or discredit the ALJ's ultimate conclusion if [she] otherwise points to information that justifies [her] credibility determination.").

Here, the ALJ did not fully credit Plaintiff's allegations because: (1) they were "not entirely consistent" with the evidence, and the evidence and medical records did not support the allegations; (2) Plaintiff's testimony was inconsistent; (3) Plaintiff's reported daily activities did not constitute "strong evidence in favor of finding the

12

claimant disabled"; and (4) Plaintiff's required treatment had been routine and conservative. (R. 24–26). There are several errors in the ALJ's analysis.

First, an ALJ may not disregard or discount a claimant's symptom allegations solely because they are not substantiated by objective evidence. *See Villano*, 556 F.3d at 562; SSR 16-3p, at *5. This is particularly true with allegations of pain. *See Pierce v. Colvin*, 739 F.3d 1046, 1049–50 (7th Cir. 2014) ("An ALJ may not discount a claimant's credibility just because her claims of pain are unsupported by significant physical and diagnostic examination results."). Yet the ALJ discounted Plaintiff's symptom and pain allegations because they were "not entirely consistent with the medical evidence and other evidence in the record." (R. 24–25).

Furthermore, in concluding that Plaintiff's allegations were not supported by the medical records and evidence, the ALJ improperly recited only the evidence that supported her conclusion, while ignoring contrary evidence. *See Meuser v. Colvin*, 838 F.3d 905, 912 (7th Cir. 2016). The ALJ's conclusion relied upon the results of a February 2014 consultative examination and an April 2016 MRI. (R. at 25 (citing R. 274–76, 437–38)). As one example of a purported contradiction, the ALJ found that Plaintiff's "alleged back pain radiating to her lower extremities and numbness in her lower extremities" was contradicted by findings from the February 2014 examination, which showed negative straight leg raise signs and that Plaintiff's lumbar spine had an "essentially intact and normal" range of motion. (*Id.*). But the ALJ ignored at least five later examinations (between February 2015 and November 2015) where Plaintiff demonstrated *positive* straight leg raise tests in both legs. (R. 277–80, 404). The ALJ

13

similarly ignored a May 2015 physical therapy record documenting a *restricted* range of motion for Plaintiff's lumbar spine, namely, that Plaintiff presented "with lumbar ROM[6] restrictions – moderate restrictions in lumbar flexion [and] severe restrictions into lumber extension." (*Id.* at 368). The ALJ was required to confront this evidence, which is contrary to the evidence she cited, and explain why it was rejected. *Moore*, 743 F.3d at 1123. She did not do so.

Second, the ALJ was not permitted to simply identify evidence that allegedly contradicted Plaintiff's allegations; she was also required to explain *how* that evidence contradicted Plaintiff's allegations. *See Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000) (finding that the ALJ's failure "to explain why the objective medical evidence does not support [the claimant's] complaints of disabling pain" was erroneous); SSR 16-3p, at *8 ("We will explain which of an individual's symptoms we found consistent or inconsistent with the evidence in his or her record and how our evaluation of the individual's symptoms led to our conclusions."). Yet the ALJ failed to explain why Plaintiff's April 2016 MRI results, which the ALJ described as showing "no spinal stenosis or nerve root compression," contradicted Plaintiff's alleged pain and symptoms. (R. at 25 (citing R. at 437–38)).

In fact, the ALJ apparently assumed that the absence of spinal stenosis or nerve root compression made Plaintiff's alleged pain and symptoms less likely. But that is a medical determination, and the ALJ did not identify any supporting medical evidence for this determination. Thus, the ALJ's assumption, which appears to be

---

[6] "ROM" stands for range of motion.

based on nothing more than her lay opinion, cannot be used to legitimately discount Plaintiff's allegations. *See, e.g.*, *Hill v. Colvin*, 807 F.3d 862, 868 (7th Cir. 2015) ("[T]he ALJ reasoned that [the claimant] was exaggerating her back pain because she had never been diagnosed with nerve root compression, loss of disc space height, or spinal stenosis. The ALJ's conclusion is not supported by any medical evidence in the record; it amounts to the ALJ improperly 'playing doctor.'").

Third, the ALJ erred in her evaluation of Plaintiff's daily activities. "[A]lthough it is appropriate for an ALJ to consider a claimant's daily activities when evaluating their credibility, this must be done with care," as an ability to perform daily activities "does not necessarily translate into an ability to work full-time." *Roddy v. Astrue*, 705 F.3d 631, 639 (7th Cir. 2013) (internal citation omitted). Here, although the ALJ conceded that Plaintiff had described "fairly limited" daily activities, she reasoned that "two factors weigh against considering these allegations to be strong evidence in favor" of a disability finding: (1) the inability to objectively verify Plaintiff's alleged daily activities "with any reasonable degree of certainty"; and (2) the difficulty in attributing the alleged limitation in Plaintiff's daily activities to her medical condition, "as opposed to other reasons, in view of the relatively weak medical evidence and other factors discussed in this decision." (R. 25).

To start, the inability to objectively verify a claimant's testimony about her daily activities is not a legitimate consideration. *Moore*, 743 F.3d at 1125 (finding that the ALJ erred in rejecting testimony about daily activities "on the basis that it cannot be objectively verified with any reasonable degree of certainty"). Such testimony is

15

"naturally subjective, hence the need for the ALJ to make a credibility determination" in the first place. *See Buechele v. Colvin*, No. 11 C 4348, 2013 WL 1200611, at *17 (N.D. Ill. Mar. 25, 2013) (addressing identical reasoning from an ALJ). Indeed, in rejecting another ALJ's invocation of this reasoning, the Seventh Circuit explained that "[w]hatever uncertainty may exist around such self-reports [of daily activities] is not by itself reason to discount them—otherwise, why ask in the first place?" *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014).

The ALJ's second factor does not fare any better. Although the ALJ asserted that the "relatively weak medical evidence and other factors discussed in this decision" make it difficult to attribute Plaintiff's daily limitations to her medical condition, she never identified any of this "relatively weak" evidence or the purported "other factors." *See Moore*, 743 F.3d at 1125 ("[T]he ALJ cannot reject a claimant's testimony about limitations on her daily activities solely by stating that such testimony is unsupported by the medical evidence.") (internal quotations omitted). Thus, the ALJ's belief that Plaintiff's daily activities are limited for some reason other than her medical condition is, at best, speculative. *See Buechele*, 2013 WL 1200611, at *17. And if the ALJ believed that certain evidence (or the lack of certain evidence) contradicted Plaintiff's alleged daily activities, she was required to explain this belief. *See Jelinek v. Astrue*, 662 F.3d 805, 812 (7th Cir. 2011) ("ALJs must explain perceived inconsistencies between a claimant's activities and the medical evidence."); *McKinzey v. Astrue*, 641 F.3d 884, 890 (7th Cir. 2011) ("[T]he ALJ must explain her [credibility] decision in such a way that allows us to determine whether she reached her decision

in a rational manner, logically based on her specific findings and the evidence in the record."). Again, the ALJ did not do so.

In addition, the ALJ went on to list several examples of Plaintiff's abilities that she thought outweighed Plaintiff's reported limited daily activities. Specifically, the ALJ identified Plaintiff's ability to care for her three young children, "which can be quite demanding both physically and emotionally," with only some assistance from her mother; to do laundry; to cook three to four times per week for her children; to sometimes go grocery shopping; to walk her children to the school bus a couple times per week; to attend parent/teacher conferences; to attend her children's ballgames (where she brought her own chair and would not stay for the whole game); and to read, watch television, play computer games, and do crossword puzzles. (R. at 25). Missing from the ALJ's summary of these abilities, however, is any of the required analysis as to why they "outweigh" or otherwise contradict Plaintiff's testimony regarding her "fairly limited" daily activities. *See Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001) (finding that the ALJ should have explained the purported inconsistencies between the claimant's daily living activities, his complaints of pain, and the medical evidence); *Perry v. Colvin*, 945 F. Supp. 2d 949, 965 (N.D. Ill. 2013) ("[T]he act of summarizing the evidence is not the equivalent of providing an analysis of the evidence."). For example, the ALJ does not explain how reading, watching television, playing computer games, and completing crossword puzzles—physically undemanding activities that Plaintiff could stop doing whenever she needed or wanted to—are inconsistent with her description of "fairly limited" daily activities.

17

Moreover, Plaintiff's ability to take care of her children despite the potential physical and emotional toll does not give any indication as to how she would face "the challenges of daily employment in a competitive environment." *See Beardsley*, 758 F.3d at 838 (addressing similar reasoning by an ALJ, who discounted the claimant's physical limitations because she provided for her mother, which "can be quite demanding both physically and emotionally"); *see also Gentle v. Barnhart*, 430 F.3d 865, 867 (7th Cir. 2005) ("[The claimant] *must* take care of her children, or else abandon them to foster care or perhaps her sister, and the choice may impel her to heroic efforts.") (emphasis in original). And most of the activities identified by the ALJ—doing laundry, cooking, grocery shopping, walking her children to the bus stop a couple times a week, attending parent/teacher conferences, and attending ballgames—are ones that merely illustrate Plaintiff's care of, and for, her children. Such activities cannot be casually equated to those required by the labor market, as the ALJ appears to have done. *See Gentle*, 430 F.3d at 867 (criticizing ALJ's reliance on the claimant's ability to cook, clean, shop, and take care of herself and her two small children in finding the claimant capable of full-time work).

For these reasons, the ALJ failed to "build an accurate and logical bridge from the evidence" to her determination. *Berger*, 516 F.3d at 544 (internal quotations omitted). The Court finds that the ALJ did not offer substantial evidence for discounting Plaintiff's pain and symptom allegations, which is an error requiring remand. Although the Court does not hold that the ALJ should have found Plaintiff's subjective allegations fully credible, the foundation underlying her negative

assessment was inadequate. Greater elaboration and explanation is necessary to ensure a full and fair review of the evidence. *See Zurawski*, 245 F.3d at 888.

**C. Summary and Other Issues**

In sum, the ALJ's decision was not supported by substantial evidence and the Court cannot assess the validity of the ALJ's findings and provide meaningful judicial review. Remand for further proceedings is required because the ALJ failed to build an "accurate and logical bridge" between the evidence and her conclusions regarding Plaintiff's RFC and her analysis of Plaintiff's subjective symptom allegations. *See Newell v. Astrue*, 869 F. Supp. 2d 875, 890–92 (N.D. Ill. 2012); *Lewis v. Astrue*, No. 11 C 3466, 2012 WL 1831277, at *10 (N.D. Ill. May 18, 2012).

On remand, the ALJ shall reevaluate Plaintiff's subjective symptom and pain allegations pursuant to SSR 16-3p, with due regard to the full range of evidence; sufficiently articulate how she evaluated that evidence; and then explain the logical bridge from the evidence to her conclusions. The ALJ shall then reevaluate Plaintiff's RFC, considering all the evidence of record, including Plaintiff's testimony, and shall explain the basis of her findings in accordance with applicable regulations and rulings. With the assistance of a VE, the ALJ shall determine whether there are jobs that exist in significant numbers that Plaintiff can perform.

Finally, the Court does not believe this case meets the standard for an award of benefits and declines that request by Plaintiff. *See Briscoe*, 425 F.3d at 355 (reversal with an instruction to award benefits is only appropriate if "all factual issues have been resolved and the record can yield but one supportable conclusion") (quotations

omitted). That is not the case here, and it is not the purview of this Court to gather or reweigh evidence. Therefore, Plaintiff's motion is granted insofar as it requests remand for further proceedings.

## IV. CONCLUSION

For the reasons stated above, Plaintiff's request to remand for further proceedings [16] is **GRANTED**, and the Commissioner's motion for summary judgment [19] is **DENIED**. Pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision is reversed, and the case is remanded to the Commissioner for further proceedings consistent with this opinion.

E N T E R:

Dated: September 17, 2018

*Mary M Rowland*

MARY M. ROWLAND
United States Magistrate Judge

20